**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

JANE DOE 5, a minor, by and through her Next Friends JANE ROE 2 and JOHN ROE 2,

Plaintiff,

v.

X.AI CORP., X.AI LLC, and DOE DEFENDANTS 1-25,

Defendants.

Case No. 5:26-cv-05314-TLB

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jane Doe 5 brings this action against Defendants X.AI Corp. and X.AI LLC ("xAI"), and the Doe Defendants 1-25 (collectively, "Defendants") for civil remedies arising out of Defendants' knowing production, possession, and distribution of AI-generated child sexual abuse material ("CSAM") and deepfake visual material ("DVM") created using Grok, xAI's generative artificial intelligence platform, and other yet-unknown image-generating artificial intelligence platforms.

## I. NATURE OF THE ACTION

1. xAI's Grok platform and associated image-generating artificial intelligence products are regularly accepting as inputs images of actual individuals and generating sexually explicit images depicting those individuals without their consent. The images received as inputs and created and distributed by Grok as outputs include images of real, identifiable children and qualify as child sexual abuse material ("CSAM").

2. Grok is creating and delivering to its users thousands of photographs that qualify as CSAM, as well as images which qualify as "deepfake visual material" ("DVM") in violation of various state and federal laws.

3. Critically, image-generating artificial intelligence, including xAI's technology — Grok — actually produced the CSAM. When a user submits a photograph and a text prompt to Grok, the model itself generates the resulting image through a process called diffusion, iteratively refining visual data to create a new, coherent image.

4. xAI produced, possessed, and distributed CSAM — it created the unlawful images on its servers, held them on its servers, and then transmitted them back to the requesting user over the internet. The resulting image is the model's own creation; it did not exist before the model generated it, and it could not have existed but for the model. The image is processed through servers owned, operated, or controlled by xAI.

5. Unlike images edited or created using standard photo-editing software, like Adobe Photoshop, where a user pulls various tools and commands to directly amend the images (cutting, shading, drawing, pasting, or other commands), image-generating AI operates more like a vendor or contractor: the user provides the AI with written instructions describing the desired outcome, and the AI model interprets the instructions and performs the amendments itself, creating a new image consistent with the user's instructions to the best of its ability.

6. Plaintiff's photographs were submitted as inputs to Grok, and CSAM was generated from them through Defendants' platforms.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to the Arkansas Constitution, Article 7, § 11, and Ark. Code Ann. § 16-13-201, because Plaintiff asserts claims arising under the

laws of the State of Arkansas and the common law. This Court also has concurrent jurisdiction over Plaintiff's federal statutory claims under Masha's Law, 18 U.S.C. § 2255, which provides that an action under that section "may be commenced in any United States district court."

8. This Court has personal jurisdiction over xAI because xAI purposefully availed itself of the privileges of conducting business in the State of Arkansas: xAI markets, sells, and distributes its generative AI products, including Grok, to citizens of Arkansas through the Apple App Store, the Google Play Store, paid subscriptions on X (formerly Twitter), the SuperGrok subscription service, and the Grok website; xAI's technology was used in and directed at Arkansas: the NCMEC CyberTip that initiated this investigation was filed by "X.AI LLC (formerly known as Twitter)" itself, confirming that xAI's servers processed the content at issue in connection with a user in Arkansas; and the CSAM produced on xAI's servers was distributed back to Grok users in Arkansas.

9. This Court has personal jurisdiction over the other AI platforms because, upon information and belief, they purposefully availed themselves of the privilege of conducting business in the State of Arkansas: they market, sell, and distribute their generative AI products, to citizens of Arkansas through the Apple App Store, the Google Play Store, paid subscriptions, subscription services, and their websites; Defendants' technology was used in and directed at Arkansas, all of which constitutes purposeful direction of activity toward this forum.

10. Venue is proper in Benton County, Arkansas, pursuant to Ark. Code Ann. § 16-60-104 because a substantial part of the events giving rise to Plaintiff's claims occurred in Benton County: Plaintiff resided in Arkansas at the time the photographs were taken.

11. Defendants are also subject to personal jurisdiction under Ark. Code Ann. § 16-4-101, the Arkansas long-arm statute, because they transacted business in Arkansas, committed

tortious acts in Arkansas, and caused injury in Arkansas arising out of acts outside the State while regularly doing or soliciting business in Arkansas.

## III. PARTIES

12. Plaintiff Jane Doe 5 is a minor female, and she is depicted in hundreds of photographs that qualify as CSAM which were created by Grok. Jane Doe 5 brings this action by and through her Next Friends, Jane Roe 2 and John Roe 2, her parents and legal guardians.

13. Plaintiff brings this action using a pseudonym because she is a minor child and a victim depicted in AI-generated child sexual abuse material created from photographs taken of her. Public disclosure of Plaintiff's identity would compound the severe emotional distress, stigma, and risk of re-victimization already alleged herein, and would create a substantial risk that members of Plaintiff's community will associate Plaintiff with the sexually explicit material at issue, exposing her to further embarrassment, harassment, and potential exploitation.

14. Given the highly sensitive and intimate nature of the allegations, Plaintiff's privacy interests substantially outweigh any public interest in disclosure of her identity at this stage of the litigation.[1]

15. Defendant X.AI LLC is a Nevada limited liability company and wholly owned subsidiary of X.AI Corp.

16. Defendant X.AI Corp. is a Nevada corporation with a principal address of 1450 Page Mill Rd, Palo Alto, California 94304, and maintains additional offices in San Francisco, California.

[1] Plaintiff is contemporaneously moving for leave to proceed under pseudonym and will provide her identity to the Court and Defendants under an appropriate protective order.

17. xAI owns the generative AI model known as Grok and the image- and video-generator Grok Imagine.

18. The additional currently-unknown AI Defendants will be amended as evidence is obtained identifying their role in creating CSAM and DVM based on inputs and prompts delivered by Russell Edward Bloodworth.

## IV. FACTUAL ALLEGATIONS

### A. Generative Artificial Intelligence

19. Generative artificial intelligence models capable of generating photorealistic images from text-based prompts have rapidly advanced in recent years. The integration of text-to-image AI models into large, user-facing platforms, including social media sites like xAI's X (formerly Twitter), has made this technology available to hundreds of millions of users, who can generate altered images and videos with short natural-language prompts.

20. Users can prompt generative AI models to create "deepfakes," in which an AI model digitally alters a real person's body, face, or voice, making someone appear to say or do something that they did not actually say or do.[2]

21. One type of deepfake that Generative AI image tools are capable of is "digital undressing," where a user submits a clothed photograph of a real person and the AI model generates an image depicting that person nude or in sexually explicit attire. This capability has given rise to a proliferation of so-called "nudify" or "undress" applications.

---

[2] *Science & Tech Spotlight: Deepfakes*, U.S. Gov. Accountability Office, https://www.gao.gov/assets/gao-20-379sp.pdf (last accessed June 15, 2026).

22. When a user prompts a generative AI model to create an image or video, the model draws upon its training data to create the new content, iteratively refining visual static data to create an understandable image.

23. The user does not direct or control any individual step of this generation process beyond the original prompt—the model performs every step of this task.

24. The resulting image or video is, in a technical sense, the model's own creation. It did not exist before the model generated it, and it could not have existed but for the model.

25. The image or video is often processed through servers owned, operated, or controlled by the model developer, and in many implementations, the developer's systems save or log the generated content.

**B. Industry-Standard Guardrails to Prevent CSAM**

26. It is industry standard to employ a number of tools and techniques to mitigate the danger that an image- or video-generator will be used to create nonconsensual sexualized deepfakes of real persons.[3] These standards focus on preventing any sexualized images, because a model that can create sexualized images of adults cannot be prevented from creating CSAM.

27. Industry standards focus on proactive "Safety by Design" principles, multi-layered technical controls, and strict legal compliance.[4] These standards require that AI companies anticipate, detect, and mitigate threats at every stage of the AI lifecycle.

28. Industry standards for preventing CSAM in AI-generated images and videos are established through a collaboration of non-profit child safety organizations, major AI technology

---

[3] *Thorn and All Tech Is Human Forge Generative AI Principles with AI Leaders to Enact Strong Child Safety Commitments*, Thorn, https://www.thorn.org/blog/generative-ai-principles/ (last accessed June 15, 2026).

[4] *Id.*

companies, and government regulatory bodies, including Thorn, IEEE, NIST, the AI Safety Institute, All Tech Is Human, INHOPE, WeProtect, and The Tech Coalition.

29. Specifically, the industry employs some of the following actions to prevent unlawful conduct through their models:

a. Training data curation requires filtering sexual and abuse content out of the training sets used by the models, which reduces their propensity to generate such content;

b. Red-teaming involves hiring external experts to attempt to circumvent safeguards and identify holes and weak spots before public release;

c. Pre-inference filters apply rules to user prompts so that prompts seeking generation of sexual or abuse content are rejected;

d. Alignment training, also known as reinforcement learning from human feedback, incorporates human feedback on model responses so the model learns human preferences;

e. System prompts are detailed lists of instructions fed into the models as rules, invisible to users, that override user prompts and direct the models to avoid creating sexual and abuse content;

f. Post-inference filters recognize that generated content constitutes sexual or abuse content and prevent such content from being returned to users;

g. Hash matching utilizes databases of known CSAM, such as NCMEC hashes, to identify and block the generation or spread of similar content;

h. Watermarking implements digital watermarks to track the provenance of AI-generated content;

i. Zero-tolerance policies explicitly prohibit the creation or distribution of AI-generated sexual content involving minors in terms of service; or

j. Mandatory reporting requires adherence to legal obligations to report detected CSAM to authorities such as NCMEC.

### C. "Spicy Mode" – xAI's Generative AI Model Grok

30. In April 2023, X (formerly Twitter) owner Elon Musk announced he was planning to release a generative AI chatbot as an alternative to ChatGPT, and on November 3, 2023, xAI

announced Grok-1, a chatbot that "will also answer spicy questions that are rejected by most other AI systems."[5]

31. On December 9, 2024, xAI updated Grok's capabilities with a new autoregressive image generation model, explaining that xAI "trained the model on billions of examples from the internet, giving it a deep understanding of the world" and that "it excels at photorealistic rendering and precisely following text instructions."[6]

32. On July 28, 2025, xAI released Grok Imagine with image- and video-generation capabilities.[7]

33. Unlike other major image-generator developers like OpenAI, Anthropic, and Meta, "xAI has made explicit content part of Grok's DNA."[8] In developing Grok, xAI did not use any of the industry-standard methods of safeguarding against the creation of sexual and abuse content. *Id*.

34. On October 20, 2025, xAI officially announced Grok Imagine's "Spicy Mode" as "a new capability that pushes the boundaries of visual storytelling and creative expression in AI-generated video."[9]

---

[5] Announcing Grok, xAI (Nov. 3, 2023), https://x.ai/news/grok.
[6] Grok Image Generation Release, xAI (Dec. 9, 2024), https://x.ai/news/grok-image/generation/release.
[7] Elon Musk (@elonmusk), X (Aug. 4, 2025), https://x.com/elonmusk/status/1952535613560983757.
[8] *Behind Grok's 'Sexy' Settings, Workers Review Explicit and Disturbing Content*, Business Insider (Sept. 1, 2025), https://www.businessinsider.com/elon-musk-grok-explicit-content-data-annotation-2025-9.
[9] *Grok Imagine Launches "Spicy Mode," Expanding Creative Freedom in AI Video Generation*, PR NEWSWIRE (Oct. 20, 2025), https://www.prnewswire.com/news-releases/grok-imagine-launches-spicy-mode-expanding-creative-freedom-in-ai-video-generation-302588487.html.

35. On November 6, 2025, xAI posted the Grok 4 system prompts, including safety instructions that promote permissiveness in Grok's responses, including that "teenage" or "girl" does not imply underage and removing restrictions on dark, violent, adult content themes.[10]

36. Beginning on December 28, 2025, xAI users extensively prompted Grok to create nonconsensual sexualized content of real people after Elon Musk encouraged the use of xAI's platform to generate such content by posting his request to Grok to generate an image of him in a bikini on December 31, 2025. Elon Musk (@elonmusk) https://x.com/elonmusk/status/2006545074340139454, X (Dec. 31, 2025). Musk posted this as part of the "put her in a bikini" trend, where X users asked Grok to remove clothes from images of real women and children and put them in bikinis and sexualized positions.[11] Grok's own account posted acknowledgement of posting AI-altered photos of real girls between the ages of twelve and sixteen.[12]

37. The Center for Countering Digital Hate reviewed a random sample of 200,000 images of the 4.6 million images Grok produced between December 29, 2025, and January 8, 2026, estimating that Grok generated 3 million sexualized images, including 23,000 that appeared to depict children. [13]

[10] grok-prompts / grok4_system_turn_prompt_v8.j2, GITHUB, https://github.com/xai-org/grok- prompts/blob/main/grok4_system_turn_prompt_v8.j2 (last visited July 28, 2026); grok-prompts_4_safety_ptompt, GITHUB, https://github.com/xai-org/grok-prompts/blob/main/grok_4_safety_prompt.txt (last visited July 28, 2026).
[11] *'Add Blood, Forced Smile': How Grok's Nudification Tool went Viral*, The Guardian (Jan. 1, 2026), https://www.theguardian.com/news/ng-interactive/2026/jan/11/how-grok-nudification-tool-went-viral-x-elon-musk.
[12] Grok (@grok), X (Dec. 30, 2025), https://x.com/grok/status/2006094181291164001.
[13] *Grok Floods X With Sexualized Images of Women and Children*, Center for Countering Digital Hate, (Jan. 22, 2026) https://counterhate.com/research/grok-floods-x-with-sexualized-images/.

38. In January 2026, a researcher reviewed 800 archived Imagine URLs and found that slightly under 10% of the images appeared to include CSAM, including "instances of photorealistic people, very young, doing sexual activities."[14]

39. On January 16, 2026, California Attorney General Rob Bonta sent xAI a cease and desist letter, demanding the company take immediate action to stop the creation and distribution of deepfake, nonconsensual intimate images and CSAM, stating that "[t]he creation of this material is illegal."[15]

40. On January 26, 2026, the European Commission launched an investigation into Grok regarding the creation of sexually explicit fake images of women and minors under the EU's Digital Services Act.[16]

41. On March 26, 2026, the Amsterdam District Court issued a preliminary injunction prohibiting xAI from generating and distributing sexual imagery featuring people stripped naked without consent, and from generating child pornographic material.[17]

42. On information and belief, Musk and other decision makers at xAI knew that Grok would be capable of producing CSAM once it was enabled to produce sexually explicit content of adults. Moreover, on information and belief, Musk and other decision makers at xAI also knew

---

[14] *Grok is Generating Sexual Content Far More Graphic than what's on X*, Wired (Jan. 7, 2026), wired.com/story/grokis-generating-sexual-content-far-more-graphic-than-whats-on-x.

[15] Press Release, Cal. Dep't of Justice, Off. of the Att'y Gen., *Attorney General Bonta Sends Cease and Desist Letter to xAI, Demands It Halt Illegal Actions Immediately* (Jan. 16, 2026), https://oag.ca.gov/news/press-releases/attorney-general-bonta-sends-cease-and-desist-letter-xai-demands-it-halt-illegal.

[16] *EU Probes Musk's Grok AI Feature Over Deepfakes of Women, Minors*, AL JAZEERA (Jan. 26, 2026), https://www.aljazeera.com/news/2026/1/26/eu-launches-probe-into-grok-ai-feature-creating-deepfakes-of-women-minors.

[17] *Stichting Offlimits v. X.AI LLC*, No. C/13/783613 / KG ZA 26-120 (Rb. Amsterdam Mar. 26, 2026), ECLI:NL:RBAMS:2026:3106, https://uitspraken.rechtspraak.nl/details?id=ECLI:NL:RBAMS:2026:3106.

that sexually explicit content would be created on, and using, xAI servers, which host Grok Imagine and are used to create the sexualized deepfake images and videos. The resulting sexually explicit content would then be distributed to the requesting users from xAI servers, via Grok or one of the many licensees of the Grok model. In addition, on information and belief, the training data on which xAI trained Grok included child sex abuse material, and therefore Grok was predisposed to create new child sex abuse material and deliver it to its users.

43. Critically, Musk and other decision makers at xAI not only know Grok is being used to create sexually explicit material concerning actual human individuals, but have initiated legal proceedings to protect its ability to do so.[18]

**D. AI-Generated CSAM Is Illegal**

44. Title 18 U.S.C. § 2256(8) defines child pornography, or CSAM, as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

45. An "identifiable minor" includes a person who was a minor at the time the visual depiction was created, adapted, or modified, or whose image as a minor was used in creating,

---

[18] *Elon Musk's xAI sues Minnesota over law to ban 'nudify' apps*, CNBC, Jul. 28, 2026, https://www.cnbc.com/2026/07/28/spacexs-xai-sues-minnesota-over-law-to-ban-nudify-apps-.html, (last accessed August 3, 2026).

adapting, or modifying the visual depiction, and who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic. 18 U.S.C. § 2256(9).

46. Real child pornography is not protected speech under the First Amendment. Nor is morphed child pornography — visual depictions created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct — protected speech.

47. The AI-generated CSAM of the minor Plaintiff constitutes the production of child pornography because it involves the morphing, adaptation, or modification of images of real children, retaining their identifiable features to produce sexually explicit content. 18 U.S.C. § 2252A(a)(7). This production was with the intent of distributing the resulting CSAM to the requesting customer.

48. On information and belief, xAI possessed the CSAM of the minor Plaintiff on its servers after Grok produced their CSAM and then transported and distributed the unlawful contraband to a user. xAI advertised the features of Grok that would produce CSAM, namely the "spicy" or "NSFW" sexual content, knowing that Grok could be used — and was being used — to produce CSAM.

49. Under Arkansas law, Ark. Code Ann. § 5-27-602 makes it unlawful to distribute, possess, or view matter depicting sexually explicit conduct involving a child. A.C.A. § 5-27-602. Grok distributed and possessed sexually explicit content involving the child-Plaintiff. Although this statute is criminal in nature, its violation establishes negligence per se and provides the predicate unlawful conduct supporting Plaintiff's common law claims.

**E. xAI Produced, Possessed, and Distributed CSAM**

50. xAI's Grok platform produced the CSAM. When users uploaded a clothed photograph of a minor and entered a prompt requesting that the photograph be altered to depict

nudity or sexual content, it was Grok — operating on xAI's servers — that generated the resulting image. The original photographs were (in many cases) not CSAM; it became CSAM only after xAI's AI model morphed the file on xAI's servers. xAI therefore produced the CSAM within the meaning of 18 U.S.C. § 2252A(a)(7).

51. xAI then possessed the CSAM on its servers after Grok produced it and before distributing it to the user. This possession constitutes a violation of 18 U.S.C. § 2252A(a)(5)(B).

52. xAI then distributed the CSAM by transmitting the AI-generated image from its servers over the internet — a means of interstate commerce — back to the requesting user. This distribution constitutes a violation of 18 U.S.C. § 2252A(a)(2).

53. On information and belief, any AI-generated image or video using Grok, even when initiated through a middleman application or platform, requires the use of xAI servers, on which Grok is run, to produce the file.

**Plaintiff-Specific Allegations**

54. **Jane Doe** 5 is a twelve-year-old girl. One or more of her photographs were submitted as inputs to xAI's Grok platform, and Grok created multiple media items qualifying as CSAM depicting Jane Doe 5.

55. Jane Doe 5's photographs were submitted for morphing by Defendants' models and served as the basis for output which qualifies as CSAM.

56. Moreover, Jane Doe 5 must now deal with the risk that images that depict her in sexually explicit condition may be circulating across the internet. More alarming is the fact that this event occurred for a large number of families from the same community, increasing the risk that members of her community will become aware that she is depicted in such photos, subjecting her to embarrassment and stigma due to the potential such photos could be surfaced elsewhere.

57. Critically, the CSAM images Defendants created of Jane Doe 5 are *indistinguishable from* the non-CSAM images which were submitted as image inputs to Defendants' image-generating AI models.

58. Images of Jane Doe 5 exist on the internet, via social media or school, church, or other websites, which means any person can copy those images and submit them to Defendants' models and generate additional CSAM material depicting her.

59. Jane Doe 5 has suffered and will continue to suffer due to xAI's production, possession, and distribution of CSAM which depicts her.

60. Jane Roe 2 and John Roe 2, her parents, are now also forced to determine how best to protect Jane Doe 5 in the future – both from the events that have already transpired via Grok's and the other Defendants' morphing photographs of her into CSAM, as well as the stress and fear that naturally coincides with the knowledge the CSAM images depicting her are on the internet and potentially in the hands of other bad actors.

61. All victims—even those who are not yet aware or able to understand the implications of xAI's conduct as it concerns them—have suffered and continue to suffer severe emotional distress as a result of the production and distribution of their AI-generated CSAM and SEM. Those old enough to understand experience acute anxiety about who may have viewed these files and feel a complete lack of control over the ongoing dissemination of the files. They live in constant fear that someone they encounter may have seen this invasive and sexually explicit content created with images of them as children, and parents whose children experience the same, and likely worse, fear for their children. Their ability to participate in normal daily activities has been impaired by resulting anxiety, depression, and stress.

62. Plaintiff fears for her safety, as the AI-generated images create a substantial risk that people will discover her real identity and she will become a victim of stalking, harassment, or further exploitation.

## V. CAUSES OF ACTION

### COUNT I
### Masha's Law: Production with Intent to Distribute Child Pornography (18 U.S.C. §§ 2255(a), 2252A(a)(7))

63. Plaintiff Jane Doe 5, by and through her Next Friends, Jane Roe 2 and John Roe 2, re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

64. Plaintiff brings civil claims pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2252A(a)(7), which prohibits the knowing production with intent to distribute, or distribution, by any means, including a computer, in or affecting interstate or foreign commerce, child pornography that is an adapted or modified depiction of an identifiable minor.

65. Defendants' AI technology produced CSAM, as defined by 18 U.S.C. § 2256(8), using minor Plaintiff's real images, and then distributed the AI-generated CSAM images from their servers over the internet, a means of interstate commerce, to a user, Russell Bloodworth. In all instances, the real images uploaded into Defendants' servers were not unlawful CSAM but only became unlawful content after Defendants' AI models (i) morphed the files to produce and distribute CSAM, (ii) hosted and/or stored the morphed images on their servers, and (iii) distributed the CSAM material to Bloodworth.

66. Plaintiff suffered personal injury as a result of Defendants' violation of 18 U.S.C. § 2252A(a)(7).

67. Title 18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A and who suffers personal injury as

a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

68. Plaintiff intends to prove actual damages as a result of Defendants' conduct. At minimum, Plaintiff intends to seek statutory liquidated damages in the amount of $150,000 per violation against each Defendant, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to both 18 U.S.C. §§ 2255(a) and 2252A(f).

69. Defendants' conduct was intentional, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of Plaintiff, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

**COUNT II**
**Masha's Law: Distribution of Child Pornography (18 U.S.C. §§ 2255(a), 2252A(a)(2))**

70. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

71. Plaintiff brings claims pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2252A(a)(2), which prohibits knowingly distributing any "child pornography" using any means or facility of interstate or foreign commerce, including by computer.

72. Defendants' AI technology produced CSAM using minor Plaintiff's real images and then distributed the AI-generated CSAM images from xAI servers over the internet to Bloodworth. In all instances, the real images uploaded into Defendants' servers were not unlawful CSAM but only became so after Defendants' AI morphed the files on xAI servers.

73. Plaintiff suffered personal injury as a result of Defendants' violation of 18 U.S.C. § 2252A(a)(2).

74. At minimum, Plaintiff intends to seek statutory liquidated damages in the amount of $150,000 per violation against each Defendant, as well as costs, attorney's fees, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. §§ 2255(a) and 2252A(f).

75. Defendants' conduct warrants an award of punitive damages.

**COUNT III**
**Masha's Law: Possession of Child Pornography (18 U.S.C. §§ 2255(a), 2252A(a)(5)(B))**

76. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

77. Plaintiff brings claims pursuant to Masha's Law based on Defendants' violation of 18 U.S.C. § 2252A(a)(5)(B), which prohibits knowingly possessing any material that contains an image of "child pornography" that was produced using materials that have been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

78. Defendants' AI technology produced CSAM using minor Plaintiff's real images, generating CSAM using image databases on their servers. The production of this CSAM was in or affecting interstate or foreign commerce. Defendants possessed the resulting AI-generated CSAM on their servers before distributing it to Bloodworth, and on information and belief, retained this material on their servers.

79. Plaintiff suffered personal injury as a result of Defendants' violation. At minimum, Plaintiff intends to seek statutory liquidated damages in the amount of $150,000 per violation, costs, and attorney's fees.

80. Defendants' conduct warrants an award of punitive damages.

**COUNT IV**
**Violation of Arkansas Criminal Code: Distributing, Possessing, or Viewing of Matter Depicting Sexually Explicit Conduct Involving a Child (Ark. Code Ann. § 5-27-602) — Negligence Per Se**

81. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

82. Arkansas Code Annotated § 5-27-602 prohibits the distribution, possession, or viewing of matter depicting sexually explicit conduct involving a child.

83. Arkansas law does not, on its face, provide a private civil right of action under § 5-27-602. However, under well-established Arkansas common law, the violation of a statute designed to protect a particular class of persons constitutes negligence per se when the plaintiff is a member of the protected class and the harm suffered is the type the statute was designed to prevent. Section 5-27-602 was enacted to protect minors from the harms of child sexual exploitation. Plaintiff is a member of the class of persons the statute is intended to protect. The emotional, psychological, and reputational injuries suffered by Plaintiff are the type of harm the statute was designed to prevent.

84. Defendants violated Ark. Code Ann. § 5-27-602 by producing, possessing, and distributing on their servers matter depicting sexually explicit conduct involving children — namely, the AI-generated CSAM created by Grok using photographs of real minors, including Plaintiff. Defendants' Grok platform was the instrumentality that created the images, held them on xAI's servers, and transmitted them to the requesting user.

85. Defendants' violations of § 5-27-602 constitute negligence per se.

86. As a direct and proximate result of Defendants' statutory violations, Plaintiff suffered serious injuries, including emotional distress, reputational harm, and pain and suffering.

87. Defendants' conduct warrants an award of punitive damages.

**COUNT V**
**Strict Liability — Design Defect**

88. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

89. At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok's creation of AI-generated CSAM of the Plaintiff.

90. Defendants' Grok is designed and intended to be a generative AI photo-and-image-generation tool. Defendants' Grok is distributed and sold to the public through retail channels (i.e., the Apple App Store and the Google Play Store) and through paid subscriptions. Defendants' Grok is marketed and advertised to the public for the personal use of the end-user.

91. Defendants defectively designed Grok to allow users to create AI-generated CSAM depicting real minors. The defects in the design of Defendants' Grok existed prior to the release of Grok to the public, and there was no substantial change to Grok between the time of its release and the time of distribution. The users who created the AI-generated CSAM of Plaintiff used Grok as intended.

92. Defendants failed to test the safety of the features they developed and implemented for use on Grok to prevent AI-generated CSAM. Defendants' Grok is defective in design because Grok fails to meet reasonable safety expectations when used in an intended or reasonably foreseeable manner. Defendants marketed, promoted, and advertised Grok as capable of creating "spicy" and "NSFW" content.

93. Alternative designs were available that would reduce the output of AI-generated CSAM, including all of the industry-standard guardrails described herein.

94. The emotional and economic injuries of Plaintiff were reasonably foreseeable to Defendants at the time of Grok's development, design, advertising, marketing, promotion, and distribution.

95. Plaintiff was injured as a direct and proximate result of the Defendants' defective designs.

96. Defendants' conduct warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

## COUNT VI
## Negligence — Design Defect

97. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

98. Defendants knew, or by the exercise of reasonable care, should have known that Grok posed risks of creating AI-generated CSAM featuring real minors.

99. Defendants owed Plaintiff a duty to exercise reasonable care in the design, development, training, deployment, and operation of Grok so as to prevent Grok from being used to create, generate, or distribute CSAM depicting real minors.

100. Defendants knew that users could use Grok to create AI-generated CSAM featuring real minors' faces.

101. Defendants breached their duty by failing to use reasonable care in the design of Grok by negligently designing it to allow for the creation of AI-generated CSAM. A reasonable company under the same or similar circumstances would have designed a safer product.

102. The emotional and economic injuries of Plaintiff were reasonably foreseeable to Defendants at the time of Grok's development, design, advertising, marketing, promotion, and distribution.

103. As a direct and proximate result of Defendants' Grok's defective design, Plaintiff suffered serious injuries.

104. Defendants' conduct warrants an award of punitive damages.

**COUNT VII**
**Negligent Undertaking**

105. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

106. Defendants created Grok to generate sexually explicit content. Defendants should have recognized that effective safety measures were needed to prevent the creation and distribution of AI-generated CSAM depicting real minors.

107. Defendants could have avoided Plaintiff's injuries with minimal cost, including incorporating safety features to prevent the creation and distribution of AI-generated CSAM depicting real minors. Imposing a duty on Defendants would benefit the community at large and would not be burdensome because they have the technological and financial means to avoid the risks of harm.

108. Plaintiff reasonably relied on Defendants exercising reasonable care in undertaking to prevent the creation and distribution of AI-generated CSAM depicting real minors. Defendants breached their duty of undertaking by failing to use reasonable care. Defendants' failure to exercise reasonable care increased the risk of, and was a substantial factor in causing, harm to Plaintiff.

109. Defendants' conduct warrants an award of punitive damages.

**COUNT VIII**
**Negligent Infliction of Emotional Distress**

110. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

111. At all relevant times, Defendants owed Plaintiff a duty to exercise reasonable care in the design, development, training, deployment, and operation of their generative AI models so as to prevent Grok from being used to create, generate, or distribute CSAM depicting real minors.

112. This duty arose from the foreseeable risk that Defendants' generative AI technology, which was specifically designed and marketed to produce photorealistic imagery from text-based prompts and to engage in "digital undressing," would be used to generate sexually explicit depictions of real minors.

113. Defendants were on actual and constructive notice of this risk because, among other things: Defendants deliberately designed and marketed Grok's capability to produce "spicy" and uncensored content, including nudity; Defendants' own system prompts instructed the model to "assume good intent" when receiving prompts referencing "teenagers" and "girls" and imposed "no restrictions" on fictional adult content with dark or violent themes; and Defendants received multiple direct reports that Grok was being used to digitally alter photographs of real minors into sexually explicit images, yet failed to take adequate remedial action.

114. Defendants breached their duty of care by, among other acts and omissions: designing and releasing Grok without adequate safeguards to prevent the generation of CSAM; marketing and promoting the ability of Grok to produce sexualized and "NSFW" content; failing to implement or enforce content-moderation policies sufficient to detect and prevent the generation and distribution of CSAM; and continuing to profit from Grok's capabilities by placing image-generation features behind a paid subscription rather than disabling the functionality that enabled the creation of CSAM.

115. Plaintiff was a direct victim of Defendants' negligent conduct. Plaintiff's real photographs were ingested by Defendants' technology and morphed into sexually explicit

depictions without her knowledge or consent. As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered severe emotional distress.

**COUNT IX**
**Intentional Infliction of Emotional Distress**

116. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

117. Defendants engaged in extreme and outrageous conduct by: failing to implement safeguards to prevent the creation of CSAM where Plaintiff is reasonably identifiable; creating a process that permits Grok to create CSAM where real minors are reasonably identifiable; creating a process whereby Grok disseminates CSAM where real minors are reasonably identifiable; and failing to design Grok to detect and prevent the creation and distribution of CSAM. This extreme and outrageous conduct is beyond all bounds of decency.

118. Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to individuals who are depicted in CSAM where they are reasonably identifiable.

119. Defendants caused Plaintiff severe emotional distress. Because of Defendants' conduct, Plaintiff has suffered severe emotional distress, harassment, loss of privacy, and is at substantial risk of future harm, including stalking.

**COUNT X**
**Public Nuisance**

120. Plaintiff re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

121. A public nuisance is "an unreasonable interference with a right common to the general public," and circumstances that may sustain a holding that an interference with a public

right is unreasonable include conduct which involves a significant interference with the public health, safety, peace, comfort, or convenience; conduct proscribed by statute, ordinance, or administrative regulation; or conduct of a continuing nature or that has produced a permanent or long-lasting effect upon the public right.

122. xAI has significantly interfered with the public peace, comfort, and convenience by permitting Grok to create and disseminate AI-generated CSAM featuring reasonably identifiable minors, as the public has a right to be free from such patently illegal images.

123. xAI has unreasonably interfered with a right common to the public by creating and disseminating AI-generated CSAM featuring reasonably identifiable minors, as it is proscribed by federal statutes, namely 18 U.S.C. § 2252A, and by Arkansas Code Annotated § 5-27-602.

124. xAI has further unreasonably interfered with a right common to the public by creating and disseminating AI-generated CSAM featuring reasonably identifiable minors on the internet, creating permanent and long-lasting effects as these images will continue to spread and proliferate.

125. The societal harm caused by xAI's generative AI CSAM includes normalization and desensitization, creating a gateway to child sex abuse offending, and corruption of youth.

126. Defendants knew, or should have known, that the design and promotion of Grok without appropriate guardrails would create a public nuisance.

127. As well as harming the public, Grok has particularly injured Plaintiff who is depicted in these illegal images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court award relief against Defendants as follows:

a. An order awarding Plaintiff statutory damages or actual damages at her election, restitution, disgorgement, attorney's fees and costs, and any other relief that may be permitted by law or equity pursuant to the claims for relief;

b. An order awarding Plaintiff compensatory damages for emotional distress, reputational harm, pain and suffering, loss of privacy, and other injuries sustained as a direct and proximate result of Defendants' conduct;

c. An order permanently enjoining xAI from engaging in the illegal conduct alleged herein, including but not limited to ordering Defendants to implement industry-standard safeguards to prevent the creation, possession, and distribution of CSAM through Grok;

d. An order declaring that Defendants' conduct, as alleged herein, violates 18 U.S.C. §§ 2252A(a)(2), (5)(B), and (7); Ark. Code Ann. § 5-27-602; California Penal Code §§ 311.1, 311.2, 311.3, and 311.11; California Civil Code § 1708.86; and California Business and Professions Code § 17200, et seq;

e. An order awarding Plaintiff punitive damages in an amount sufficient to punish Defendants and deter others from like conduct;

f. An order awarding Plaintiff prejudgment and post-judgment interest pursuant to the claims for relief;

g. An order awarding Plaintiff costs, expenses, and attorney's fees as permitted by law; and

h. An order awarding Plaintiff further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to the Arkansas Rules of Civil Procedure, Plaintiff hereby demands a jury trial for all claims so triable.

Dated: November 6, 2026

*/s/ Samuel R. Jackson*

Samuel R. Jackson (ABN 2013247)
Randall K. Pulliam (ABN 98105)
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, Arkansas 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505
Email: sjackson@cbplaw.com
Email: rpulliam@cbplaw.com

*Attorneys for Plaintiff*